Michael SUSMAN, Plaintiff-Appellant,

v.

LINCOLN AMERICAN CORP. et al., Defendants-Appellees.

Ann FLAMM and Arnold FLAMM, Plaintiffs-Appellants,

v.

Rudolph EBERSTADT, Jr. and MICRODOT, INC., Defendants-Appellees.

Nos. 78–1293, 78–1310.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 14, 1978.

Decided Oct. 23, 1978.

As Amended Nov. 20, 1978.

Rehearing and Rehearing In Banc Denied Dec. 5, 1978.

---

A. Bradley Eben, Chicago, Ill., for plaintiffs-appellants.

Andrew R. Laidlaw, Randall L. Mitchell, Chicago, Ill., for defendants-appellees.

Before FAIRCHILD, Chief Judge, and CUMMINGS and WOOD, Circuit Judges.

FAIRCHILD, Chief Judge.

This is the consolidated appeal from the dismissals of two class action complaints. The district court, relying on this court's decision in *Winokur v. Bell Federal Savings and Loan,* 560 F.2d 271 (7th Cir. 1977), dismissed both actions as moot after the defendants tendered to the named plaintiffs their full monetary damages. We limit the *Winokur* language relied on by the district court and reverse its decision in both cases. We remand for determination of the motions for class certification that were pending at the time of the dismissal. In the *Susman* case, the district court also dismissed the plaintiff's derivative claims. We affirm that decision in part and reverse it in part.

In these cases, unlike *Winokur,* an appeal from the denial of class certification was effected under 28 U.S.C. § 1292(b). The facts of both cases were discussed in our decision in that appeal on the issue of whether plaintiffs' counsel could fairly and adequately represent the classes sought to be certified. *Susman v. Lincoln American Corp.,* 561 F.2d 86 (7th Cir. 1977). The facts will not be repeated here. In the prior decision we affirmed the district court's denials of class certification on the grounds that the relationship between the named plaintiffs and their counsel could lead to a conflict of interest and noted

"[P]laintiffs are free to seek different counsel and thereby dispel any possibility of a conflict of interest. In lieu of a change in counsel which might result in a certification of the class actions, plaintiffs are not barred from continuing the lawsuits on their own behalf." 561 F.2d 96.

Clearly we recognized potential further consideration of representation of the interests of class members by the named plaintiffs.

The plaintiffs in both cases sought and obtained new counsel. Renewed motions for class certification were then filed. While the renewed motions were pending the defendants tendered to the plaintiffs the amount of money they claimed to have lost as a result of the defendants' actions plus properly chargeable costs. The offers, which were made without admissions of liability by the defendants, and which were clearly made in an attempt to render the cases moot, were refused by the plaintiffs. Nevertheless, the district court held that the defendants' offers extinguished the controversies between the parties and that as a result the court no longer had jurisdiction to decide the motions for class certification. In the *Susman* case, the district court also dismissed the plaintiff's derivative claims.

### THE CLASS ACTION

The Article III requirement that the federal courts decide only issues where there is an actual case or controversy between the parties is fundamental to our judicial system. *North Carolina v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971). The jurisdictional ban on making any decisions in moot cases (or, for that matter, in reviewing decisions already made) arises from this constitutional requirement. *Liner v. Jafco, Inc.,* 375 U.S. 301, 306 n. 3, 84 S.Ct. 341, 11 L.Ed.2d 347 (1964); *Powell v. McCormack,* 395 U.S. 486, 496 n. 7, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). Yet a number of cases have been decided on the merits despite assertions that the original wrong complained of had been corrected, that the original plaintiff would no longer be affected by the outcome

of the lawsuit, or that other changes in the underlying factual situation rendered the case moot. *See, e. g., United States v. W. T. Grant Co.,* 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1503 (1953) (corporate director resigned from interlocking directorates which were subject of the complaint); *Carroll v. President and Comm'rs of Princess Anne,* 393 U.S. 175, 89 S.Ct. 347, 21 L.Ed.2d 325 (1968) (ten day injunction complained of had expired two years previously); *Southern Pacific Terminal Co. v. I.C.C.,* 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911) (ICC order under attack had expired by its own terms); *Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975) (plaintiff had obtained the divorce she was seeking in another state). It is not necessary in this decision to discuss the variety of exceptions to the mootness doctrine that may be available in various cases.[1] What are important, here, however, as in *Winokur* are those cases which involve class action complaints.

 In *Winokur* we were directly concerned with the question whether the right to appellate review of a denial of class certification could survive the death of the controversy. We held it could not. Our present case is different, and does not present that question. In *Winokur,* however, we set forth several generalizations, including

> 2. When there is no determination that an action be maintained as a class action and the controversy between the named party in his own interest and his opponent dies, court adjudication is not appropriate because there is no controversy between parties who are present or represented before the court in the action. 560 F.2d 277.

This generalization literally applies to our instant case because at the critical moment there had been no determination that the action be maintained as a class action. We

think, however, that our instant case differs significantly from *Winokur* and from *Board of School Comm'rs v. Jacobs,* 420 U.S. 129, 95 S.Ct. 848, 43 L.Ed.2d 74 (1975), on which we relied in *Winokur.* Here, at the critical moment, the question of maintaining the class action had been freshly raised, consistently with the suggestion of the appellate court that it could be reopened after a change in counsel.

We consider the motion for certification, while pending, as sufficiently, though provisionally, bringing the interests of class members before the court so that the apparent conflict between their interests and those of the defendant will avoid a mootness artificially created by the defendant by making the named plaintiff whole. We limit the language of generalization No. 2 in *Winokur* accordingly.[2]

 Courts have consistently recognized that unnamed class members have an interest in a lawsuit even before a Rule 23 determination is made that a class action may be maintained on their behalf. Thus, potential class members are given the opportunity to support or oppose class certification or to challenge the adequacy of representation by the named plaintiff. *Knuth v. Erie-Crawford Dairy Coop. Ass'n,* 395 F.2d 420 (3rd Cir. 1968). The statute of limitations on their individual causes of action may be tolled from the date of filing of the class action complaint. *American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). They may also have a right to be informed of, or even included in, a settlement that occurs prior to class certification. *Kahan v. Rosensteil,* 424 F.2d 161, 169 (3rd Cir.), *cert. denied,* 398 U.S. 950, 90 S.Ct. 1870, 25 L.Ed.2d 290 (1970). Thus, at least in a limited sense, the interests of the unnamed class members are before the court during the pendency of a motion for class certification.

---

1. There is an extensive discussion of the current state of the mootness doctrine in *Geraghty v. U. S. Parole Commission,* 579 F.2d 238 (3rd Cir. 1978).

2. It would be arguable, on the same theory, that a complaint with class action allegations

sufficiently brings the interests of the class members before the court, at least where the court proceeds with reasonable promptness to reach the issue of class action maintenance. We do not need to reach that question. See footnote 4 *infra.*

Normally, however, a class action must be certified as such in order for it to escape dismissal once the claims of the named plaintiff become moot. *Franks v. Bowman Transportation,* 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976); *Sosna v. Iowa,* 419 U.S. 393, 402, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). But the courts have recognized that an absolute requirement would prevent some otherwise justiciable claims from ever being subject to judicial review. Thus, in *Sosna,* the Supreme Court said

"There may be cases in which the controversy involving the named plaintiffs is such that it becomes moot as to them before the district court can reasonably be expected to rule on a certification motion. In such instances, whether the certification can be said to 'relate back' to the filing of the complaint may depend upon the circumstances of the particular case and especially the reality of the claim that otherwise the issue would evade review." 419 U.S. 393, 402 n. 11, 95 S.Ct. at 559.

Clearly the Court had in mind situations where the nature of the complaint was such that the mere passage of time would usually make the individual plaintiff's complaint moot before a court could reasonably be expected to rule on a certification motion. And in practice that is how the "relation back" doctrine has been applied. *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). We do not have such a situation here. But, just as necessity required the development of the relation back doctrine in cases where the underlying factual situation naturally changes so rapidly that the courts cannot keep up, so necessity compels a similar result here. If the class action device is to work, the courts must have a reasonable opportunity to consider and decide a motion for certification. If a tender made to the individual plaintiff while the motion for certification is pending could prevent the courts from ever reaching the class action

issues, that opportunity is at the mercy of a defendant, even in cases where a class action would be most clearly appropriate.

We hold, therefore, that when a motion for class certification has been pursued with reasonable diligence and is then pending before the district court, a case does not become moot merely because of the tender to the named plaintiffs of their individual money damages. The district court has jurisdiction to consider the motion for class certification and should hear and decide that motion prior to deciding whether or not the case is mooted by the tender. This does not mean that the district court should ignore the fact that a tender has been made. The tender may raise a question, on which we now express no opinion, as to the named plaintiffs' ability to fairly and adequately represent the class.[3] But the class certification issues should be addressed by the district court prior to dismissals of the lawsuits. We express no opinion on the appropriate decisions on the issues.

We acknowledge the conflict between this decision and that of the Eighth Circuit in *Bradley v. Housing Authority of Kansas City, Missouri,* 512 F.2d 626 (8th Cir. 1975). We believe, however, that the result we have reached here is consistent with Article III, since in fact there will be no adjudication of the merits of the lawsuit unless there is first a determination that there are adversary parties and that the requirements of justiciability are present. *Geraghty v. U. S. Parole Commission,* 579 F.2d 238 (3rd Cir. 1978). Our decision in these cases is also consistent with the recent decision of the Court of Appeals for the Fifth Circuit in *Roper v. Consurve, Inc.,* 578 F.2d 1106 (5th Cir. 1978), which contained this language

The notion that a defendant may short-circuit a class action by paying off the class representatives either with their acquiescence or, as here, against their will,

---

**3.** See *Kuahulu v. Employers Insurance of Wausau,* 557 F.2d 1334 (9th Cir. 1977); *Roper v. Consurve,* 578 F.2d 1106 (5th Cir. 1978); *Banks* *v. Multi-Family Management, Inc.,* 554 F.2d 127 (4th Cir. 1977); and generally, H. Newberg, Newberg on Class Actions §§ 1085–1092.

deserves short shrift. Indeed, were it so easy to end class actions, few would survive. . . . By the very act of filing a class action, the class representatives assume responsibilities to members of the class. They may not terminate their duties by taking satisfaction; a cease-fire may not be pressed upon them by paying their claims. 578 F.2d 1106, 1110.[4]

Finally, although the recent decisions of the Ninth Circuit in *Kuahulu v. Employers Insurance of Wausau,* 557 F.2d 1334 (1977) and the Third Circuit in *Geraghty v. U. S. Parole Commission,* 579 F.2d 238 (1978) both involved factually distinct situations, their emphasis, like that in *Sosna,* on evaluating claims of mootness in light of the idiosyncrasies of each individual case is consistent with the approach we have used here.

## THE DERIVATIVE CLAIMS

The district court dismissed the plaintiff Susman's derivative claims against Lincoln American corporate defendants and the individual defendants on the grounds that

"Since plaintiff does not seek recession [sic] of the alleged illegal merger, once the merger took place plaintiffs lost the ability to sue derivatively. *See Voege v. Ackerman,* 364 F.Supp. 72, 74 (S.D.N.Y. 1973); *Basch v. Talley Indus., Inc.,* 53 F.R.D. 9, 11–12 (S.D.N.Y.1971); *Heit v. Tenneco, Inc.,* 319 F.Supp. 884, 887–88 (D.Del.1970)."

No. 73 C 1089 (N.D.Ill., Filed January 27, 1978)

The plaintiff contends that this ruling is in error since it involved the application of state rather than federal law and that even if state law is controlling, it was misapplied on the facts of the plaintiff's case. All of the parties have referred to Delaware law as the law to be applied to the extent that state law is controlling.

We do not need to address the plaintiff's assertion that federal rather than state law should apply in determining the capacity of a shareholder to bring a suit under the federal securities laws on behalf of a corporation that has been merged with a defendant corporation subsequent to the filing of the complaint since it is clear that the derivative claims asserted by the plaintiff are founded solely on state law.[5] Nor do federal equitable considerations come into play, since the plaintiff did not attempt to enjoin the merger and is not now seeking rescission—in contrast to the situation we were presented with in *Ramsburg v. American Investment Co. of Ill.,* 231 F.2d 333 (7th Cir. 1956). The only question, then, is whether under Delaware law the plaintiff may maintain this derivative suit.

Delaware law is quite clear in stating that a derivative suit seeking only money damages brought on behalf of one corporation and against another cannot survive the merger of those two corporations regardless of whether the suit was filed before or after the merger took place. *Bokat v. Getty Oil Co.,* 262 A.2d 246 (Del.Sup.

4. The Fifth Circuit has held that the very filing of a class action complaint places the plaintiff in a representative capacity, even if no motion for certification has been filed or even if class certification has been denied. (See cases cited in *Roper.*) Our decision today is limited to the fairly narrow situation where a motion for certification has been pursued with reasonable diligence and is pending when a tender is made.

5. Paragraph 10 of the plaintiff's amended complaint sets forth specific allegations of improper activity by the defendants. Paragraph 11 recites that "The foregoing acts of defendants constitute deceptive devices, a scheme to defraud and misstatements and omissions to state material facts in connection with the purchase and sale of securities and in connection with the solicitation of proxies *to the detriment of minority shareholders and are violative of* Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C.A. § 78j(b)), and the rules promulgated by the Securities Exchange Commission thereunder, including Rule 10B–5" (Emphasis added.) Paragraph 12, in contrast, says "The foregoing also constitute a breach *of common law to the detriment of Consumers* and its minority shareholders in that: . . ." (Emphasis added.) The contrast between these two paragraphs clearly indicates that the federal claims are brought only on behalf of the minority shareholders (whom plaintiff seeks to represent in a class action), while the common law claims are brought both on behalf of the minority shareholders, and, derivatively on behalf of Consumers National.

872

Ct.1970). The dismissal of the derivative suit against Lincoln American Life Insurance Company, the surviving corporation, must therefore be affirmed.

Slightly more difficult is the question of whether the derivative suit can be maintained against third parties, even if it must be dismissed as against the surviving corporation. The Lincoln American defendants urge us to adopt the "common sense" approach of *Vine v. Beneficial Finance Co.,* 374 F.2d 627 (2nd Cir. 1967) which noted the meaninglessness of a derivative action brought on behalf of a non-existent corporation. But in *Bokat* the Delaware Supreme Court, after dismissing the derivative claim against the surviving corporation, explicitly said

> "This conclusion, however, does not mean that the claims asserted against the individual defendants, among them J. Paul Getty, have likewise been made moot. Such is not the case." 262 A.2d at 250.

Although this statement in *Bokat* was dictum (the individual claims were barred by the statute of limitations) it was made by the Delaware Supreme Court in a case subsequent to, and indeed citing the *Vine* case relied on by Lincoln American. It must, therefore, carry more weight in this case where we must apply Delaware law.

The cited language in *Bokat* has been analyzed at some length in a decision of the United States District Court for the Southern District of New York. *Abrams v. Occidental Petroleum Corp.,* 20 Fed. Rules Serv.2d 170 (S.D.N.Y.1975) (interpreting California and Delaware law). Judge Palmieri concluded that the *Bokat* language was an attempt to reconcile the savings clause of 8 Del.Code § 261 with the anomalous situation of a corporation suing itself. Therefore, he reasoned, a derivative suit begun by a shareholder against third parties· prior to a merger could be continued after the merger (because of § 261) but that a similar suit brought against what was to become the surviving corporation must be dismissed after the merger to prevent the incongruous situation of a corporation suing itself. 20 Fed.Rules Serv.2d at 175.

We cannot disregard the clear language of the Delaware Supreme Court. We hold, therefore, that while the dismissal of the derivative claims against Lincoln American Life Insurance Company must be affirmed, the dismissal of those same claims against the third-party defendants must be reversed.

Insofar as the judgments appealed from dismissed the actions as moot without considering the questions of certification, and insofar as the judgment in No. 78–1293 dismissed the derivative action against parties other than Lincoln American Life Insurance Company, they are reversed and the causes remanded for further proceedings consistent with this opinion. In all other respects they are affirmed.