Michael SUSMAN, Plaintiff,

v.

LINCOLN AMERICAN CORPORATION, et al., Defendants.

No. 73 C 1089.

United States District Court,
N.D. Illinois, E.D.

Oct. 22, 1982.

Thomas R. Meites and Lee H. Weiner, Meites & Frackman, Chicago, Ill., for plaintiff.

Randall L. Mitchell, Adams, Fox, Marcus, Adelstein & Gerding, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

In 1973 Michael Susman ("Susman") brought this class and derivative action on behalf of Consumers National Corporation ("Consumers") and its minority stockholders. Susman asserts various violations of the Securities and Exchange Act of 1934 in connection with the "going private" merger of Consumers into Lincoln American Life Insurance Company ("Lincoln Life"), a wholly-owned subsidiary of Lincoln American Corporation ("Lincoln American"). In the latest chapter of this seemingly interminable litigation, defendants have moved for:

    (1) summary judgment on Susman's individual claims;

(2) summary judgment on the derivative claims;

(3) an order (or other appropriate relief) barring Susman from serving as class representative; and

(4) summary judgment against three class members (not named plaintiffs).

For the reasons stated in this memorandum opinion and order, defendants' first and second motions are granted, while the third and fourth motions are denied.

### Procedural History

Three earlier opinions of this Court [1] have provided a more detailed account of the source of this litigation than is needed here. More appropriate for current purposes is a brief account of the complicated procedural history underlying just one fragment of this case—the class certification issue.

At a relatively early date Judge Flaum (to whom the case was then assigned) denied Susman's motion for class certification because his family relationship with class counsel threatened Susman's ability to protect the interests of absent class members. 72 F.R.D. 187. That decision was affirmed at 561 F.2d 86 (7th Cir.1977) (*Susman I*).

After retaining new counsel, Susman renewed his motion. In response, defendants tendered the full amount of Susman's individual claim to him. When he rejected the offer, defendants filed a motion to dismiss. Judge Flaum granted defendants' motion on the ground the tender had mooted the controversy between the named parties. This time, however, our Court of Appeals reversed, 587 F.2d 866 (7th Cir.1978), *cert. denied,* 445 U.S. 942, 100 S.Ct. 1336, 63 L.Ed.2d 775 (1980) (*Susman II*).

Inspired by this victory, Susman persevered with his quest for certification. This Court's February 12, 1981 memorandum opinion and order rejected the class designation he had tendered but provided a road map for redefinition of the proposed class. Susman accepted the invitation, and this Court certified the redefined class March 10, 1981.

### Summary Judgment Against Susman on His Individual Claims

Defendants advance two reasons for summary judgment against Susman individually:

1. Susman could not possibly have relied on alleged misrepresentations and omissions in the proxy materials at issue—even if there is a rebuttable presumption of reliance—because he failed to read those materials.

2. Defendants' tender of the full damages allegedly sustained by Susman renders his individual claims moot.

This Court is persuaded by defendants' mootness argument and will hence not address the reliance issue.

■ Under the overwhelming weight of authority, mootness is triggered by such a tender of damages. Indeed, one of Judge Flaum's earlier opinions expressly held defendants' tender extinguished their controversy with Susman.[2] Though law of the case doctrines do not technically apply to earlier decisions of a fellow District Judge, this Court will not lightly depart from them. *See* 1B Moore, *Federal Practice* ¶ 0.404[4], at 453 (2d ed. 1982).

---

1. 500 F.Supp. 748 (N.D.Ill.1980); unpublished Feb. 12, 1981 opinion; and 517 F.Supp. 931 (N.D.Ill.1981).

2. *See* Judge Flaum's January 27, 1978 opinion, relying on his then-recent decision in *Flamm v. Eberstadt,* No. 76 C 427, at 2 n. 2 (Dec. 30, 1977). Susman erroneously contends *Susman II* reversed the mootness ruling. What it actually did was to overrule Judge Flaum's determination that Susman's class certification motion had been mooted by defendants' tender. On that score the Court of Appeals (587 F.2d at 869, emphasis added) viewed the pending motion "as sufficiently, though provisionally, bringing the interests of class members before the court so that the apparent conflict between their interests and those of the defendant will avoid a *mootness artificially created by the defendant by making the named plaintiff whole.*" At worst *Susman II* thus assumed arguendo the mootness of Susman's individual cause of action. Certainly Judge Flaum's finding on that score emerged unscathed.

Moreover, except for two Ninth Circuit cases[3] the courts have uniformly espoused the position taken by Judge Flaum. *See, e.g., Zeidman v. J. Ray McDermott & Co., Inc.,* 651 F.2d 1030 (5th Cir.1981) (reversing trial court's dismissal of entire class action, but leaving intact its dismissal of named plaintiffs' private claims); *Goldberg v. Taylor Wine Co.,* 499 F.Supp. 468 (E.D.N.Y. 1980); *Weisman v. Darneille,* 79 F.R.D. 389 (S.D.N.Y.1978). Accordingly, defendants' motion for summary judgment on Susman's individual claims is granted (conditioned, of course, on delivery of the tendered amount to Susman).

### Susman's Status as Class Representative

Defendants rely on three arguments to bar Susman's service as class representative:

1. Because defendants' tender has mooted Susman's individual claims, he lacks the "personal stake" required by Article III to vindicate the interests of absent class members.

2. Because Susman's claims are moot, he can no longer meet the Fed.R.Civ.P. ("Rule") 23(a)(4) requirement that he "fairly and adequately protect the interests of the class."

3. Susman's individual claims, turn on the issue of reliance and are therefore not "typical" of those shared by the other class members (Rule 23(a)(3)).

All three of these arguments are without merit.

First, *United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980) and *Deposit Guaranty National Bank v. Roper,* 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980) dealt with Article III considerations in a closely related context. Both *Roper* and *Geraghty* held that named plaintiffs had a sufficient personal stake in the class action to appeal the trial court's denial of class certification, despite the mootness of their substantive claims. That same analysis should extend to Susman's prosecution of the class's substantive claims.

Thus in *Roper,* a class action much like the present one, the Court found the requisite personal stake in the named plaintiff's "desire to shift part of the costs of litigation to those who will share in its benefits if the class is certified and ultimately prevails" (445 U.S. at 336, 100 S.Ct. at 1173). That aptly characterizes Susman's desire, and if Article III demands no more, it should permit Susman to represent the class on the merits.

*Geraghty* appears to go even farther down the same road. It said (445 U.S. at 402, 100 S.Ct. at 1211) the "personal stake" requirement must be applied separately to the two claims asserted by the named plaintiff: (1) his own claim on the merits and (2) the claim that he is entitled to represent a class. It then found the named plaintiff's "vigorous advocacy" met Article III's demands on the class certification issue. And at least by implication the Article III requirement, once so met, would carry forward to the litigation of the class claims—else the Supreme Court would not have continued (*id.* at 405–07, 100 S.Ct. at 1213–1214):

> Our conclusion that the controversy here is not moot does not automatically establish that the named plaintiff is entitled to continue litigating the interests of the class. "[I]t does shift the focus of examination from the elements of justiciability to the ability of the named representative to 'fairly and adequately protect the interests of the class.' Rule 23(a)." *Sosna v. Iowa,* 419 U.S., at 403 [95 S.Ct., at 559]. We hold only that a case or controversy still exists. The question of who is to represent the class is a separate issue.

■ Nor does the mootness of Susman's individual claims establish the inability under Rule 23(a)(4) "fairly and adequately [to] protect the interests of the class"—the second of defendants' arguments. Address-

---

**3.** *See Cameron v. E.M. Adams & Co.,* 547 F.2d 473, 478 (9th Cir.1976); *Williams v. Sinclair,* 529 F.2d 1383, 1390 (9th Cir.1975). *Cameron's* felt need to retain the named plaintiffs' individual claims to assure viability of the class claims has been overtaken by later developments in the case law (discussed hereafter). *Williams,* an earlier case from the same Circuit, was presumably a product of the same reasoning.

ing the identical issue in *Sosna v. Iowa,* 419 U.S. 393, 403, 95 S.Ct. 553, 559, 42 L.Ed.2d 532 (1975), the Supreme Court held the named plaintiff, whose claim had expired after class certification, an adequate class representative. Rule 23(a)(4) was satisfied because (*id.*) "it is unlikely that segments of the class appellant represents would have interests conflicting with those she has sought to advance, and . . . the interests of that class have been competently urged at each level of the proceeding. . . ." Absent any assertion of conflicting interests and with no attack on the competency of Susman's representation, *Sosna* provides compelling support for Susman's continued action as class representative on the substantive claims.

That conclusion is fortified by two recent decisions holding a defendant's tender of full damages to the named plaintiff does not impair his status as class representative. *Roper v. Consurve, Inc.,* 578 F.2d 1106, 1111 (5th Cir.1978); *Flamm v. Eberstadt,* 76 C 427 (N.D.Ill. July 22, 1981 and Mar. 5, 1982) (the case previously consolidated with this one for appeal in *Susman II*). As Judge Flaum put it in *Flamm,* slip op. at 6 (Mar. 5, 1982):

> . . . but for the defendant's tender of full damages, the plaintiff's claims and interest would be the same as the remaining members of the putative class. Defendants should not be permitted to "pick off" proposed class representatives before the propriety of certification is resolved and thereby frustrate a class action otherwise appropriate, just as defendants should

not be able to render a proposed class action moot by tendering full damages to the named plaintiff before the issue of certification is determined.

Those considerations equally support the notion that defendants' tender does not render Susman an inadequate class representative.[4]

Defendants' final argument—a Rule 23(a)(3) assault on Susman's individual claims as atypical—also misses the mark.[5] Even if a reliance defense had applied to Susman's claim (before the tender), he would not be barred as class representative so long as such individual questions did not obscure the issues common to the class. *See Blackie v. Barrack,* 524 F.2d 891, 905–06 (9th Cir.1975); *Helfand v. Cenco, Inc.,* 80 F.R.D. 1, 8 (N.D.Ill.1977). Here Susman's class allegations far eclipse whatever reliance issues might have lurked beneath his private claims.

### Summary Judgment Against Susman on Derivative Counts

Defendants also urge Susman lacks standing to assert derivative claims on behalf of Consumers, which disappeared in the merger. Their position takes extended syllogistic form:

1. Susman must be a seller or purchaser of securities to sustain the class claims under SEC Rule 10b–5.

2. Toward that end, Susman's Rule 10b–5 challenge to the Consumers-Lincoln Life merger is permitted because he is deemed to have sold his shares to surviving entity Lincoln Life.

---

4. Defendants' invocation of *Banks v. Multi-Family Management, Inc.,* 554 F.2d 127 (4th Cir.1977) is unavailing, for its rationale has been eviscerated by *Roper* and *Geraghty.*

5. There is to be sure a conceptual tension between the typicality requirement of Rule 23(a)(3) and decisions (such as *Sosna* and *Roper*) that endorse (or concede the possibility of) a named plaintiff with moot claims as class representative:
   1. Because a moot claim is no longer a claim at all, it is anomalous to call it "typical" of the live claims shared by the other class members.
   2. On a more substantive level, true typicality cannot be established because the purpose of that requirement—to provide an in-

centive for vigorous advocacy—is undercut by full payment of the claim.
In a sense then *Sosna* and its progeny have effectively jettisoned the typicality requirement in class actions championed by named plaintiffs with individually mooted claims. It would however create an even greater anomaly to dispense with the criterion entirely. In that event named plaintiffs, who could not pass muster under Rule 23(a)(3) if their individual claims were still alive, could nevertheless maintain a class action once their own claims were moot! Because defendants' typicality argument fails in any case, this Court need not determine the Rule 23 ramifications of *Sosna* or resolve the dilemma just posed.

3. As a precondition for bringing a derivative suit on Consumers' behalf, Rule 23.1[6] requires Susman to have been a Consumers' stockholder both at the time suit was filed and throughout the pendency of the litigation.

4. Susman "cannot have it both ways by claiming to be a seller of securities for purpose of standing under 10b–5 and a shareholder for purposes of derivative standing." *Issen v. GSC Enterprises, Inc.,* 508 F.Supp. 1278, 1295 (N.D.Ill.1981). Susman counters that *Susman II* refutes the last proposition, the linchpin of defendants' argument.

*Susman II* did indeed read Delaware law (more accurately a dictum in *Bokat v. Getty Oil Co.,* 262 A.2d 246 (Del.Sup.Ct.1970)) as allowing Susman's prosecution of the derivative counts despite his loss of stockholder status in the merger. Ordinarily that would end the discussion, both in precedential terms and—more compellingly—under law of the case concepts. But later Delaware cases (none brought to this Court's attention by the parties) discloses *Susman's* view of Delaware law to have been mistaken.

■ Thus the plaintiff in *Weinberger v. UOP, Inc.,* 5 Del.J.Corp.L. 158 (Del.Ch.

1980), having been converted from a stockholder in the merged corporation to a creditor in the surviving one, was held to lack standing to challenge the merger derivatively on behalf of the disappearing corporation. *See also Schreiber v. Carney,* 447 A.2d 17, 21–22 (Del.Ch.1982) (confirming the loss of stockholder standing to sue derivatively after a cash-out merger).[7] Most recently (just this month) Chancellor Brown reconfirmed that lack of standing in a thoughtful opinion in *Lewis v. Anderson* (Del.Ch. Oct. 8, 1982), in the course of which *Susman II* was discussed in detail and held an inaccurate application of *Bokat* ("... the courts in *Susman* and *Abrams* [on which *Susman* relied in part] have read something into the *Bokat* decision that simply is not there," slip op. at 12). *Lewis* held that although the *Bokat* dictum indicated the claims against corporate insiders were not *mooted* by a merger, the *standing* of the former minority stockholders to assert those claims had been extinguished.[8] Defendants' motion for summary judgment on Susman's derivative claims will be granted.

### Summary Judgment Against Certain Class Members

Defendants also move for summary judgment against class members Preston W.

---

**6.** Defendants may be overly charitable. To bring state-law-based derivative claims in federal court, it is entirely possible that Susman must satisfy the standing requirements of both Rule 23.1 and Delaware law. After all, Rule 23.1 could be viewed as a federal procedural question, while the Delaware statute could require standing as a matter of substantive law. *But cf. Schilling v. Belcher,* 582 F.2d 995 (5th Cir.1978) (reserving judgment on whether the issue of derivative standing is governed by federal or state law).

**7.** Both those decisions are premised on 8 Del.C. § 327, which provides (emphasis added):
In any derivative suit instituted *by a stockholder of a corporation,* it shall be averred in the complaint that the plaintiff was a stockholder of the corporation at the time of the transaction of which he complains or that his stock thereafter devolved upon him by operation of law.
In like fashion, our own Court of Appeals has (post-*Susman II*) interpreted the directly comparable language of Rule 23.1 to bar plaintiffs who lost their shareholder status during the litigation from pressing derivative claims. *See*

*Portnoy v. Kawecki Berylco Industries, Inc.,* 607 F.2d 765, 767 (7th Cir.1979).

**8.** *Lewis v. Anderson* did confirm (slip op. at 16) that *Bokat* had "recognized that in extreme cases equitable circumstances may well exist which would justify permitting a shareholder plaintiff in a derivative suit to continue a pending action in his own right despite technical loss of shareholder status resulting from a subsequent merger." No Delaware case has decided whether a going private merger, where the derivative claims are against the principals in the surviving corporation, is such an "extreme case." But unless Susman can also demonstrate that derivative standing is essential to provide greater potential benefit for his fellow minority stockholders than the class claims will provide, this Court finds no reason to strain established Delaware law. As already pointed out in the text, *Schreiber* characterized the controlling Delaware decisions as barring suit by a former minority stockholder in a cash-out merger (which would include the Consumers-National Life merger).

Grace, R.B. Potasnick and Cape Construction Company, none a named plaintiff. Assertedly those persons, with full knowledge of this action and their status as prospective class members, tendered their shares for the $8.50 merger price more than 1½ years after this suit was filed.

According to defendants those facts establish the validity of a number of affirmative defenses as a matter of law—release, accord and satisfaction, waiver, estoppel, non-reliance, mootness. Class counsel (1) dispute that argument on the merits and (2) urge consideration of this motion should not be deferred until after issues common to the class have been litigated.

■ Immediate consideration of this summary judgment motion does not commend itself to this Court. It raises factual issues, including (though not necessarily limited to) the intentions of the individual stockholders when they tendered their shares for the $8.50 merger price. Such issues do not particularly lend themselves to affidavit treatment in any event. And it would be counterproductive in this nine-year-old action to divert class counsel's efforts from preparation for trial to issues affecting only three stockholders (who were, on defendants' own showing, represented by other lawyers at the outset and presumably are still).

More general considerations lead to the same result. Judicial economies afforded by the class action device would be largely eroded if courts had to adjudicate issues personal to the various class members before the common class issues are reached. Here, for example, a decision for defendants on common issues (such as liability) would obviate the need to address the individual issues raised in defendants' motion. By contrast, current consideration of the summary judgment motion precludes any

saving of lawyers' or judicial resources. See, as representative of the more usual approach, *Seiden v. Nicholson,* 69 F.R.D. 681, 686 (N.D.Ill.1976).

While Rule 56(b) authorizes a defendant to move "at any time" for summary judgment, the trial court has considerable discretion in determining timeliness of the motion. *See* 6 Moore, *Federal Practice* ¶¶ 56.07, 56.08, at 56–117, 56–132 to 56–134 (1982). Drawing on such discretion, this Court denies defendants' current motion, without prejudice to its renewal after the issues common to the class have been resolved.[9]

### Conclusion

There is no genuine issue of material fact, and defendants are entitled to a judgment as a matter of law, on (1) Susman's individual claims and (2) Susman's derivative claims. Defendants' motion for (3) an order barring Susman from serving as class representative and (4) summary judgment against certain class members is denied.

---

9. As support for the timeliness of this summary judgment motion, defendants advert to *Brennan v. Midwestern Life,* 450 F.2d 999 (7th Cir. 1971) and *General Motors Corp. Engine Exchange Litigation,* 594 F.2d 1106 (7th Cir.1979). These cases are plainly inapposite. The *Brennan* opinion merely recognized the *discretionary* power of a trial court to dismiss particular

unnamed class members for failure to comply with its discovery orders. Defendants' reference to the *General Motors* decision is even more strained, for that case merely addressed the need for court approval of settlements between defendants and individual class members.